STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 147-10-13 Vtec |
|---|---|
| In re Killington Village Master Plan<br> Act 250 Application Appeal | **DECISION ON MOTION** |

In this matter, SP Land Company, LLC ("SPLC") appeals the October 7, 2013 District # 1 Environmental Commission ("Commission") decision approving SPLC's application for (1) a 15-lot subdivision; (2) reaffirmation of a previously-approved 10-lot subdivision; (3) authorization to construct Phase I of the Killington Village Master Plan; and (4) associated partial findings for proposed future phases of the Killington Village Master Plan.[1]  Stephen Durkee ("Mr. Durkee") and Mountainside Properties, Inc., Mountainside Development, Inc., Fireside Properties, LLC, and Killington Village Properties, Inc. (collectively, the "Durkee Entities") cross-appeal.

Now pending before the Court are three pre-trial motions.  First, SPLC filed a motion for partial summary judgment.  Second, the Natural Resources Board ("NRB"), an interested person in this appeal, filed a cross-motion for partial summary judgment.  Finally, the NRB filed a motion to dismiss or clarify certain questions in SPLC's Statement of Questions.  Mr. Durkee and the Durkee Entities filed a response in opposition to SPLC's motion for partial summary judgment.  Interested Persons Rutland County Regional Planning Commission, Two Rivers-Ottauquechee Regional Commission, and Southern Windsor County Regional Planning Commission (collectively, the "Regional Commissions") filed memoranda in opposition to SPLC's motion for partial summary judgment and in support of the NRB's motion to dismiss or clarify questions.

---

[1] The Master Plan application coincides with a "Parking Project" application by Killington/Pico Ski Resort Partners, LLC which is the subject of a separate appeal before this Court, Docket No. 173-12-13 Vtec.  Although the Commission consolidated its review of the Master Plan and Parking Project applications, the parties have agreed that Docket Nos. 147-10-13 Vtec and 173-12-13 Vtec should proceed on parallel but separate tracks and will therefore not be consolidated.  See Killington Resort Parking Project Act 250 Amend, No. 173-12-13 Vtec (Vt. Super. Ct. Envtl. Div. Feb. 18, 2014) (Durkin, J.) (Pre-Trial Scheduling Order).

SPLC is represented in these proceedings by Christopher D. Roy, Esq.; Mr. Durkee and the Durkee Entities are represented by Nathan H. Stearns, Esq.; the NRB is represented by Gregory J. Boulbol, Esq.; and the Regional Commissions are represented by Robert E. Woolmington, Esq.

**Factual Background**

For the sole purpose of putting the pending motions into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1.     On February 28, 2012, SPLC filed application #1R0980 (the "Application") for: (1) approval of a 15-lot subdivision; (2) reaffirmation of a previously-approved 10-lot subdivision; (3) authorization to construct Phase I of the Killington Village Master Plan; and (4) associated partial findings by the Commission, pursuant to Act 250 Rule 21, for proposed future phases of the Killington Village Master Plan.

2.     The Killington Village Master Plan ("Master Plan") contemplates multiple phases of development involving approximately 2,300 residential units, a 77,000 square foot replacement skier services building, and other commercial space, to be developed over the next 20 to 30 years.  The commercial space comprises approximately 200,000 square feet, including the skier services building, and will be used for hotel staff facilities, conference rooms, ballrooms, retail, and other amenities.

3.     The 15-lot subdivision includes 11 boundary adjustments and the creation of 4 new lots. The 11 boundary adjustments amend the boundaries of the eight Development Zones established under the Master Plan.

4.     Phase I of the Master Plan entails development within the "Village Core," the further subdivision of lots within the Ramshead Brook Subdivision, and construction of two potable water systems.

5.     The Village Core development involves 193 housing units, 31,622 square feet of commercial space, a 77,000 square foot replacement skier services building, relocation of a portion of Killington Road, and a new Village Green.

6.     The Ramshead Brook Subdivision will create 32 residential lots.

7.     The potable water system construction includes the expansion of the existing Snowdon Well Field Project and the construction of the Valley Well Field Project ("VW Project").

2

8.      Cross-Appellant Stephen Durkee owns properties located at 2134 Killington Road and 2023 Killington Road in the Town of Killington, Vermont.  The property at 2134 Killington Road includes a single residence, and the property at 2023 Killington Road includes a market/office building and associated parking.  The 2134 Killington Road property is located approximately 1.3 miles north of the Village Core area on Killington Road, and the 2023 Killington Road property is located approximately 1.4 miles north of the Village Core area on Killington Road. The 2023 Killington Road property adjoins Roaring Brook.

9.      Mr. Durkee owns a controlling interest in Cross-Appellants Mountainside Properties, Inc., Mountainside Development, Inc., Fireside Properties, LLC, and Killington Village Properties, Inc.

10.     Mountainside Properties, Inc. ("MPI") owns properties located on East Mountain Road and on U.S. Route 4 in the Town of Killington, Vermont.  Both MPI properties are undeveloped. The U.S. Route 4 property is approximately 1.75 miles from the Village Core area as the crow flies and roughly 4.5 miles from the intersection of U.S. Route 4 and Killington Road.

11.     Mountainside Development, Inc. ("MDI") owns property at Mountainside Drive in the Town of Killington, Vermont.  The MDI property is an undeveloped single residential lot within a subdivision.

12.     Fireside Properties, Inc. ("Fireside") owns property at 1128 Killington Road in the Town of Killington, Vermont, approximately 2.3 miles from the Village Core area.  The Fireside property includes a hunting lodge and associated cabins.

13.     Killington Village Properties, Inc. ("KVP") owns commercial property at 923 Killington Road in the Town of Killington, Vermont.  The KVP property is approximately 2.5 miles from the Village Core area.

14.     Mr. Durkee resides at 337 Old Elbow Road in the Town of Mendon, Vermont.  Mr. Durkee regularly travels Killington Road in the area of the Village Core in order to access the properties owned by the Durkee Entities.

15.     The well site for the VW Project is located along the Ottauquechee River on U.S. Route 4.

16.     Charlie Demarest is the owner of a business property located at 4900 U.S. Route 4, in the Town of Killington, Vermont, including a gas station and convenience store known as Water

3

Wheel Trading. Mr. Demarest's property is located along the Ottauquechee River more than a half mile upstream from the well site for the VW Project.

17. The Southern Windsor County Regional Planning Commission ("SWCRPC") is a compact of 10 municipalities in east-central Vermont and is a political subdivision of state government organized under 24 V.S.A. § 4341. The Town of Killington is not a member of SWCRPC. SWCRPC has been involved in assessing land use and traffic impacts within its region related to development at the Killington and Okemo resorts in neighboring regions.

18. The Two Rivers-Ottauquechee Regional Commission ("TRORC") is a compact of 30 municipalities in east-central Vermont and is a political subdivision of state government organized under 24 V.S.A. § 4341. The Town of Killington is not a member of TRORC, however, the Town of Bridgewater, which adjoins the Town of Killington, is a member of TRORC. TRORC has been involved in assessing land use impacts in Bridgewater and other towns within its region related to development at the Killington resort.

19. The Commission rendered final party status determinations at the conclusion of its proceedings; those party status determinations, as they relate to the issues raised in the pending motions, are summarized as follows:

| Party Status Before the Commission | |
|---|---|
| Name | Criteria |
| Stephen Durkee | 1(B), 1(D), 1(E), 4, 5, 8, 9(K), 10 |
| Mountainside Properties, Inc. | 1(B), 1(D), 1(E), 4, 5, 8, 9(K), 10 |
| Mountainside Development, Inc. | 1(B), 1(D), 1(E), 4, 5, 8, 9(K), 10 |
| Fireside Properties, LLC | 1(B), 1(D), 1(E), 4, 5, 8, 9(K), 10 |
| Killington Village Properties, Inc. | 1(B), 1(D), 1(E), 4, 5, 8, 9(K), 10 |
| Charlie Demarest | 3 |
| Southern Windsor County Regional Planning Commission | 5, 9(K) |
| Two Rivers-Ottauquechee Regional Commission | 5, 9(K), 10 |
| Town of Bridgewater | (statutory party) |
| Okemo Limited Liability Company | None (request to withdraw granted) |

4

**Motion to Dismiss or Clarify SPLC's Questions**

In its motion, the NRB asks the Court to dismiss Questions 8, 9, and 13 of SPLC's Statement of Questions. In the event that the Court does not dismiss Question 13, the NRB asks the Court to order SPLC to clarify Question 13.

<u>Motion to Dismiss Questions 8 and 9</u>

Questions 8 and 9 read as follows:

8.   Whether conclusions of law and permit conditions holding SPLC responsible for sharing a proportional obligation for traffic mitigation measures under Act 250 criteria 5 (Traffic) and/or 9K (Public Investments) for future phases of the project, if any, without supporting evidence in the record is permissible, and whether such permit conditions constitute reasonable and appropriate conditions to remedy unsafe traffic conditions within the meaning of Act 250 criteria 5 (Traffic) and/or 9K (Public Investments).

9.   Whether conclusions of law and permit conditions imposing on SPLC a requirement to install sprinklers in all buildings under Act 250 criterion 7 (Municipal Services) is appropriate when there is no evidence that such a requirement is necessary to prevent the project from imposing an unreasonable burden on the ability of the local governments to provide municipal or governmental services.

The NRB argues that Questions 8 and 9 ask the Court to determine the sufficiency of the evidence below and are therefore not within the Court's jurisdiction in this de novo appeal. The NRB further argues that Question 8 should be dismissed because it raises the issue of a condition that is contingent on imposition of mitigation requirements for future phases of the project; according to the NRB, without such mitigation requirements in place, the question is not ripe. The Regional Commissions filed a memorandum in support of the NRB's motion to dismiss Questions 8 and 9 as being outside the Court's de novo review. The Regional Commissions, however, reject the argument that the issue raised by Question 8 is not ripe. SPLC opposes the NRB's motion, asserting that Questions 8 and 9 were not intended to relate to the sufficiency of evidence before the Commission, but rather ask whether the conditions imposed are appropriate in this de novo matter.

As the NRB, SPLC, and the Regional Commissions correctly recognize in their respective filings, this is a <u>de novo</u> appeal. 10 V.S.A. § 8504(h). Thus, the Court does not consider any previous decisions or proceedings below; "rather, we review the application anew as to the

specific issues raised in the statement of questions." In re Whiteyville Props. LLC, No. 179-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 13, 2012) (Durkin, J.); Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) ("A de novo trial 'is one where the case is heard as though no action whatever has been held prior thereto.'" (quoting In re Poole, 136 Vt. 242, 245 (1978))). Moreover, in reviewing a state land use application, "[o]ur authority is as broad as that of the District Commission, but no broader; we have the same jurisdictional limits as those the District Commission enjoyed when considering the application." Lathrop Ltd. P'ship, Nos. 122-7-04, 210-9-08, and 136-8-10 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2011) (Durkin, J.) (citing In re Killington, Ltd., 159 Vt. 206, 214 (1992); In re Torres, 154 Vt. 233, 235–36 (1990); V.R.E.C.P. 5(g)). In granting a state land use permit, the Commission in the first instance, and this Court on appeal, may impose "such requirements and conditions as are [an] allowable proper exercise of the police power and which are appropriate [with respect to the 10 criteria under Act 250]." 10 V.S.A. § 6086(c).

While we find SPLC's references to evidence in Questions 8 and 9 somewhat unclear, we read these questions to ask whether, on the evidence to be presented to the Court and reviewed de novo, the conditions described are reasonable and appropriate for the application before us. In considering this question, we need not, and will not, consider the record before the Commission or its decision. Rather, we have the authority to consider whether the conditions raised in these questions are appropriate with respect to the Act 250 criteria. To the extent these questions seek to challenge whether this Court should impose conditions similar to those placed on SPLC by the Commission, we conclude that these questions are appropriately before us. Thus, Questions 8 and 9 are ripe for our review and the NRB's motion to dismiss Questions 8 and 9 is **DENIED.**

Motion to Dismiss Question 13

Question 13 asks:

Whether the Findings of Fact and Conclusions of Law issued below by the District Commission, along with the associated Land Use Permit, can and should be remanded to the District Commission to clarify and correct various matters beyond the scope of the substantive questions to be determined by this Court on appeal – and which will thus remain in place notwithstanding the filing of this appeal – while the remaining issues under appeal are being adjudicated before this Court.

The NRB seeks to have Question 13 dismissed because it asks the Court to address matters beyond the Court's scope of review and fails to state a claim for which relief can be granted. The NRB further asserts that SPLC should have brought the "various matters" raised in Question 13 to the Commission through a Motion to Alter within 15 days of the Commission decision; the NRB argues that having failed to do so, SPLC should not be permitted to seek redress from the Court. Alternatively, the NRB asks the Court to require SPLC to clarify Question 13 to identify the "various matters" that SPLC believes should be clarified and corrected. In opposition, SPLC states that Question 13 was intended to promptly raise the issue of alleged errors and to seek guidance from the Court for making the necessary corrections without a de novo review of the issues.

The statement of questions informs the parties of the issues being appealed and establishes the scope of the appeal. In re Frostbite Mine, No. 12-1-11 Vtec, slip op. at 1–2 (Vt. Super. Ct. Envtl. Div. Nov. 3, 2011) (Durkin, J.). Furthermore, the Court and opposing parties "are entitled to a statement of questions that is not vague or ambiguous, but is sufficiently definite so that they are able to know what issues to prepare for trial." In re Unified Buddhist Church, Inc., Indirect Discharge Permit, No. 253-10-06 Vtec, slip op. at 5 (Vt. Envtl. Ct. May 11, 2007) (Wright, J.). We agree with the NRB that SPLC's Question 13 does not meet this standard.

To date, SPLC has not identified the portions of the Commission decision for which it seeks correction. Without further explanation, neither the Court nor the parties are able to determine whether the Court has jurisdiction to address those portions of the decision either on its own or through a remand to the Commission. Thus, the NRB's motion to clarify is **GRANTED**. The Court **DIRECTS** SPLC to clarify Question 13 and specifically state the matters for which it seeks correction **within 10 business days** of this decision. If SPLC fails to clarify, or if the issues presented are beyond the scope of this appeal, then Question 13 may be dismissed. We therefore **DEFER** our ruling on the NRB's motion to dismiss Question 13 until after the 10-day period for clarification has passed.

### Cross-Motions for Partial Summary Judgment

The pending cross-motions relate to Questions 1–7 and 13 of SPLC's Statement of Questions which, taken together, ask: (1) whether Mr. Durkee and the Durkee Entities, Mr. Demarest, the Regional Commissions, Okemo Limited Liability Company, and the Town of

7

Bridgewater are entitled to party status in this appeal; (2) whether it was proper for the Commission to make findings of fact and conclusions of law for subsequent phases of the Master Plan for which SPLC has not yet sought a land use permit on criteria for which SP Land had not specifically sought review; and (3) whether the Court can remand the land use permit to the Commission for correction of alleged errors while this appeal is pending.

## I.      Party Status

A "person aggrieved" by a district commission decision or "any party by right" may appeal a district commission decision to this Court.  10 V.S.A § 8504(a).  A "person aggrieved" is "a person who alleges an injury to a particularized interest" protected by the Act 250 Criteria, attributable to an act or decision by a district commission.  10 V.S.A. § 8502(7).  "Party by right" is defined as:

(A) The applicant.

(B) The landowner, if the applicant is not the landowner.

(C) The municipality in which the project site is located, and the municipal and regional planning commissions for that municipality.

(D) If the project site is located on a boundary, any Vermont municipality adjacent to that border and the municipal and regional planning commissions for that municipality.

(E) The solid waste management district in which the land is located, if the development or subdivision constitutes a facility pursuant to subdivision 6602(10) of this title.

(F) Any state agency affected by the proposed project.

10 V.S.A. § 8502(5).

"Challenging party status through a statement of questions has the same practical effect of moving to dismiss that party . . . ."  In re Barefoot et. al. Act 250 Application, No. 46-4-12 Vtec, slip op. at 1–2 (Vt. Super. Ct. Envtl. Div. Dec. 21, 2012) (Durkin, J.).  The Court treats party status determinations as a preliminary issue of standing.  In re Champlain Parkway Act 250 Permit, No. 68-5-12 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Nov. 14, 2012) (Walsh, J.).  Whether a party has standing affects the court's subject matter jurisdiction.  Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235.  As such, we review SPLC's pending motion regarding party status under the standard of review afforded by V.R.C.P. 12(b)(1), meaning that we accept as true all uncontroverted factual allegations and construe them in the light most favorable to the

8

party asserting standing. E.g., In re Goddard Coll. Conditional Use, No. 175-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.). A party may raise the absence of subject matter jurisdiction at any time. In re Pelkey Final Plat Major Subdivision, No. 172-12-12 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 3, 2013) (Durkin, J.). Therefore, SPLC is not limited to the specific party status issues raised in its Statement of Questions.

### a. Questions 1 and 2 – Party Status of Mr. Durkee, the Durkee Entities, and Mr. Demarest

In an appeal from a district commission decision, an aggrieved person who (1) was granted party status by the district commission pursuant to 10 V.S.A. § 6085(c)(1)(E); (2) participated in the proceedings before the district commission; and (3) retained party status at the end of the district commission proceedings "will be automatically accorded [party] status when the notice of appeal is filed unless the court otherwise determines on motion to dismiss a party." V.R.E.C.P. 5(d)(2); see 10 V.S.A. §§ 8504(a), (d)(1). To have standing in this Court as a "person aggrieved" by a district commission decision, an appellant must allege "an injury to a particularized interest" protected by Act 250 that is attributable to the decision and that can be redressed within the context of the appeal. 10 V.S.A. § 8504(a) and § 8502(7).

Specifically, the person asserting party status must first allege an interest protected by Act 250 that is particular to them, rather than a general policy concern shared with the public. In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.). An interest may be particularized even if it is shared with multiple members of the general public. Re: McLean Enters. Corp., No. 2S1147-1-EB, Mem. of Decision at 7 (Vt. Envtl. Bd. Sept. 19, 2003) (noting that it is irrelevant if others are similarly affected by a development if the impacts on the parties are "particular to them, concrete, and [are not impacts] affecting the common rights of all persons"). Second, the appellant must show a reasonable possibility that the Commission decision may affect its particularized interest. In re Bennington Wal-Mart Demolition/Constr. Permit, No. 158-10-11 Vtec, slip op. at 9–10 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.). However, we have rejected the application of any "heightened evidentiary standard, more akin to a merits review" when considering a party's standing. Id. at 10 n. 5. Finally, we note that the parties do not dispute that a decision of this Court could redress any injury which may result from the Commission's decision, provided that legal issue is preserved for our review by an appellant's statement of questions.

9

Question 1 – Mr. Durkee and the Durkee Entities

Question 1 asks:

Whether Steven Durkee, Mountainside Properties, Inc., Mountainside Development, Inc., Fireside Properties, LLC, and Killington Village Properties, Inc. (collectively the "Durkee Parties") each independently qualify in this appeal pursuant to 10 V.S.A. § 6085(c)(1)(E) under each of the following Act 250 criteria: 1(B) (Waste Disposal), 1(D) (Floodways), 1(E) (Streams), 4 (Soil Erosion), 9(K) (Public Investments) and 10 (Town Plan).

In the pending motion, SPLC asks the Court to limit the party status of Mr. Durkee and the Durkee Entities (together, the "Durkee Parties") as follows:

| Party Status of the Durkee Parties as Argued by SPLC | | |
|---|---|---|
| Name | Property | Criteria |
| Stephen Durkee | 2134 Killington Road 2023 Killington Road | 1(D), 1(E), 10 |
| Mountainside Properties, Inc. | East Mountain Road U.S. Route 4 | 8, 10 |
| Mountainside Development, Inc. | Mountainside Drive | 10 |
| Fireside Properties, LLC | 1128 Killington Road | 10 |
| Killington Village Properties, Inc. | 923 Killington Road | 10 |

Thus, SPLC seeks to eliminate party status for each of the Durkee Parties under Criteria 1(B), 4, 5, and 9(K) and under Criterion 8 for each of the Durkee Parties other than MPI. In support of its motion, SPLC submitted a statement of undisputed facts and the affidavit of Steven Selbo, President of SPLC. SPLC also attached a plan showing the proposed 15-lot subdivision ("Overall Subdivision"), a plan showing the ten previously-subdivided lots for which reaffirmation is sought, an illustrative depiction of the proposed Master Plan, a plan showing the eight Development Zones in the Master Plan, a plan showing the proposed Phase I construction, a Google Earth aerial image noting the locations of properties owned by the Durkee Parties, and four Google street view images purportedly facing toward the Village Core from the Durkee Parties' respective properties.

The Durkee Parties oppose the motion and attach a statement of disputed facts, Mr. Durkee's affidavit, a list of the Durkee Parties' respective properties, and a map showing the location of the various properties. In their response, the Durkee Parties assert that they are entitled to party status as follows:

| Party Status of the Durkee Parties as Argued by the Durkee Parties | | |
|---|---|---|
| Appellant | Property | Criteria |
| Stephen Durkee | 2134 Killington Road 2023 Killington Road | 1(B), 1(D), 1(E), 4, 5, 8, 9(K), 10 |
| Mountainside Properties, Inc. | East Mountain Road U.S. Route 4 | 5, 8, 9(K), 10 |
| Mountainside Development, Inc. | Mountainside Drive | 5, 8, 9(K), 10 |
| Fireside Properties, LLC | 1128 Killington Road | 5, 8, 9(K), 10 |
| Killington Village Properties, Inc. | 923 Killington Road | 5, 8, 9(K), 10 |

### i.    Challenges to Party Status not Raised in Statement of Questions

Before considering whether the Durkee Parties' have party status, we address their argument that SPLC cannot move for summary judgment regarding party status under Criteria 5 and 8, because SPLC failed to raise these issues in its Statement of Questions. SPLC's failure to list Criteria 5 and 8 in Question 1 does not foreclose it from asking the Court to deny party status under those criteria; rather, we treat SPLC's motion as a motion to dismiss the Durkee Parties as to Criteria 5 and 8 for lack of standing under these criteria. Such a motion can be raised at any time. In re Pelkey, No. 172-12-12 Vtec, slip op. at 1.

### ii.    Criteria 1(B) (Stormwater) and 4 (Erosion)

Criterion 1(B) requires that a project will "meet any applicable health and environmental conservation department regulations regarding the disposal of wastes, and will not involve the injection of waste materials or any harmful or toxic substances into ground water or wells." 10 V.S.A. § 6086(a)(1)(B). Criterion 4 requires that a project will not result in "unreasonable soil erosion or reduction in the capacity of the land to hold water so that a dangerous or unhealthy condition may result." 10 V.S.A. § 6086(a)(4).

SPLC argues that because Mr. Durkee's properties are respectively 1.3 and 1.4 miles away from the Village Core area along Killington Road, any impacts from waste disposal or erosion are either nonexistent or so attenuated as to be indistinguishable from the impact on the general public. (SPLC's Mem. of Law in Supp. of its Mot. for Partial Summ. J. at 4–5, filed Jan. 22, 2014.) In opposition, the Durkee Parties state that the 2023 Killington Road property abuts Roaring Brook less than one-half of a mile downstream from the "property involved in

the Project";[2] the Durkee Parties allege that this property will therefore be impacted by construction and operational stormwater discharges into the brook as well as waste resulting from erosion and runoff. (Durkee Parties' Resp. in Opp'n to Appellant's Mot. for Partial Summ. J. at 11, filed Feb. 19, 2014.) The Durkee Parties also note that Phase I of the Master Plan includes 15.8 acres of new impervious surface, which will create new stormwater runoff. Id. The Durkee Parties state that they anticipate offering evidence that "sediment discharges from construction activities into Roaring Brook will result in and/or increase the risk of undue water pollution" at Mr. Durkee's property. Id.

Although Mr. Durkee does not dispute that his 2023 Killington Road property is approximately 1.4 miles away from the proposed construction at issue in this proceeding, specifically for Phase I (Village Core, subdivision of lots within the Ramshead Brook Subdivision, and two potable water systems), we conclude that Mr. Durkee has demonstrated a particularized interest in the brook adjacent to his property that is protected by Criterion 1(B). Mr. Durkee has also established a reasonable possibility that a decision on the pending Master Plan application may affect that interest because of resulting construction and operational stormwater discharges, runoff from impervious surface area, and waste traveling downstream from erosion and runoff.

Regarding Criterion 4, however, we conclude that the Mr. Durkee has failed to demonstrate a particularized interest protected by that criterion or a reasonable possibility of harm to his particularized interest. In fact, Mr. Durkee alleges no risk of soil erosion or dangerous or unhealthy conditions on or near the 2023 Killington Road property. Cf. In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 12–13 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.) (finding a particularized interest and reasonable possibility of harm to adjacent landowners where applicant proposed to cut back a bank and remove vegetation along Route

---

[2] The Durkee Parties define the "Project" as involving "two subdivisions totaling 25 lots, a master plan development consisting of approximately 2,300 residential units, a 77,000 square-foot skier services building, the creation of 32 new residential lots, the provision of new water sources, and approximately 200,000 square feet of retail space with associated parking and utilities." (Durkee Parties' Resp. in Opp'n to Appellant's Mot. for Partial Summ. J. at 6, filed Feb. 19, 2014.) Thus, the Durkee Parties appear to be referring to the entire Master Plan application in discussing party status, rather than limiting their reference to only those portions of the Master Plan referenced in SPLC's pending application.

12

100 paralleling neighbors' property for nearly 300 feet and coming within 20 feet of their boundary line).

For the reasons discussed above, the Court concludes that Mr. Durkee is entitled to party status under Criterion 1(B). We therefore **DENY** SPLC's motion as to Criterion 1(B). Because the Durkee Parties have failed to demonstrate a particularized interest protected by Criterion 4, and a reasonable possibility that such interest may be harmed by a decision on SPLC's proposal, we conclude that the Durkee Parties are not entitled to party status under Criterion 4 and therefore **GRANT** SPLC's motion as to that criterion.

### iii.    Criterion 5 (Traffic)

Criterion 5 requires that a project will not result in "unreasonable congestion or unsafe conditions with respect to use of the highways, waterways, railways, airports and airways, and other means of transportation existing or proposed." 10 V.S.A. § 6086(a)(5). For party status under Criterion 5, "'the relevant inquiry is whether the petitioner uses the roads that may be impacted by a project on a regular basis.'" In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 14 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.) (quoting Re: Pike Indus., Inc., No. 5R1415-EB, Mem. of Decision, at 2 (Vt. Envtl. Bd. Nov. 19, 2004)). In Pike Industries, the former Environmental Board explained:

> A project may cause a hazardous condition or congestion at a point some distance from the actual project site or the petitioner's home; conversely, a person may live immediately adjacent to a proposed project but never drive the roads that the project will use. Therefore, the location of a petitioner's residence is only one factor that may be relevant to a consideration of party status under Criterion 5, to the extent that it demonstrates that the petitioner's use [of] the roads may be impacted on a regular basis and that the petitioner may thus experience impacts that differ from those experienced by the public in general.

Pike Indus., No. 5R1415-EB, at 2. See also In re Bostwick Road, No. 2006-128, slip op. at 4 (Vt. Jan. 25, 2007) (unpublished mem.), available at https://www.vermontjudiciary.org/UPEO2006-2010/eo06-128.aspx (concluding that even though appellant resided on nearby property, "he advanced no specific facts to demonstrate that the project would have an impact on his property" with respect to any of the applicable land use criteria.).

Mr. Durkee's properties at 2134 Killington Road and 2023 Killington Road are located 1.3 miles and 1.4 miles, respectively, north of the Village Core on Killington Road. (Selbo Aff. at

13

¶ 14, filed Jan. 22, 2014). Thus, traffic to the Village Core from Routes 4 and 10 travels past both of Mr. Durkee's properties. Mr. Durkee also owns a controlling interest in the entities that own five other properties within an approximately two-mile radius of the Village Core area, including two other properties on Killington Road and two properties on East Mountain Road, which intersects with Killington Road.

SPLC argues that Mr. Durkee should be denied party status under Criterion 5 because he will experience an impact similar to the impact on the general public. (SPLC's Reply Mem. in Resp. to the Durkee Entities' Opp'n to Mot. for Partial Summ. J., with Provisional Mot. to Amend Statement of Questions at 5–6, filed Mar. 7, 2014.) In support of his party status under Criterion 5, Mr. Durkee states that he travels on Killington Road, East Mountain Road, and U.S. Route 4 in the area of the proposed development on a daily basis in order to access and manage the various properties in which he owns an interest. (Durkee Parties' Resp. in Opp'n to Appellant's Mot. for Partial Summ. J. at 8, filed Feb. 19, 2014.) Because Mr. Durkee regularly travels the roads in the immediate vicinity of the project, we find that Mr. Durkee has made a showing that his interest in the traffic conditions is sufficiently particularized.

In addition, the Durkee Parties allege that the proposed development will result in increased traffic and a decrease in service levels. Id. The Durkee Parties state that they anticipate presenting evidence at trial to support their allegation that the proposed development "will likely create unsafe traffic conditions and/or cause unreasonable congestion that will affect access to [the Durkee Parties'] properties." Id. No Durkee Party has provided specific information as to why they fear that traffic from the proposed project will adversely impact them. Nevertheless, based upon the proximity of the proposed development, we conclude that Mr. Durkee's allegation that the project will result in increased traffic and decreased levels of service for his individually-owned properties is sufficient to establish a reasonable possibility that the project could harm his interest. We therefore find that Mr. Durkee has party status in this proceeding under Criterion 5.

As to the Durkee Entities, the Court is left to guess who uses the properties owned by the Durkee Entities, other than Mr. Durkee himself. It is also unclear to the Court how the Durkee Entities have a particularized interest in traffic congestion or unsafe conditions in the area of Phase I of the Master Plan. Other than Mr. Durkee's regular use of the roads to access

14

and manage these properties, the Durkee Entities do not allege that the entities regularly use the roads at issue. Without information regarding the Durkee Entities' use of the route at issue, we are unable to conclude that the Durkee Entities have a particularized interest under Criterion 5 that may be affected by a decision on the pending application.

For the reasons discussed above, the Court concludes that Mr. Durkee is entitled to party status in this proceeding under Criterion 5, but that the Durkee Entities are not entitled to party status under Criterion 5. We therefore **DENY** SPLC's motion as to Mr. Durkee, but **GRANT** SPLC's motion as to the Durkee Entities, regarding Criterion 5.

### iv.    Criterion 8

Criterion 8 requires that a project "[w]ill not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas." 10 V.S.A. § 6086(a)(8). "[W]hile generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or <u>even the mere aesthetic interests</u> of [a party], that will suffice." <u>In re Champlain Marina, Inc., Dock Expansion</u>, No. 28-2-09 Vtec, slip op. at 6 (Vt. Envtl. Ct. July 31, 2009) (Durkin, J.) (quoting <u>Summers v. Earth Island Inst.</u>, 55 U.S. 488, 494 (2009)).

The Durkee Parties allege that the properties located at 1128 Killington Road (Fireside), at 2134 Killington Road (Mr. Durkee), on Mountainside Drive (MDI), and on East Mountain Road (MPI) all have views of portions of the "Project."[3] (Durkee Aff. at ¶ 9, filed Feb. 19, 2014.) The Durkee Parties also allege that construction of the Village Core will result in loss of forest cover to be replaced by "massive buildings," changing the character of the area, and that the installation of 137 new exterior light fixtures in Phase 1 has "significant potential" to create nighttime light pollution in the area. (Durkee Parties' Resp. in Opp'n to Appellant's Mot. for Partial Summ. J. at 10, filed Feb. 19, 2014.) SPLC concedes that MPI's property on East Mountain Road has a view of the proposed Phase I site, and it does not object to MPI's party

---

[3] As noted above, the Durkee Parties define the "Project" as involving "two subdivisions totaling 25 lots, a master plan development consisting of approximately 2,300 residential units, a 77,000 square-foot skier services building, the creation of 32 new residential lots, the provision of new water sources, and approximately 200,000 square feet of retail space with associated parking and utilities." (Durkee Parties' Resp. in Opp'n to Appellant's Mot. for Partial Summ. J. at 6, filed Feb. 19, 2014.) Thus, the Durkee Parties appear to be referring to the entire Master Plan application in discussing party status.

15

status under Criterion 8. However, SPLC asserts that the 1128 Killington Road, 2134 Killington Road, and Mountainside Drive properties have no "direct view" of the Phase I site, and therefore Mr. Durkee and the other Durkee Entities, other than MPI, should not be granted party status under Criterion 8.

We conclude that the Durkee Parties' assertion that the properties located at 1128 Killington Road (Fireside), at 2134 Killington Road (Mr. Durkee), and on Mountainside Drive (in the Mountainside Subdivision) (MDI) have some view of the area of the Master Plan[4] raises a dispute of material fact that prohibits our granting of summary judgment for SPLC on this criterion. We further conclude that the Durkee Parties have a particularized interest in protecting the use and enjoyment of their property and that they have shown a reasonable possibility that their aesthetic interest may be affected by a decision on SPLC's pending application. Because our real property jurisdiction is limited to the threshold determination of an applicant's interests and right to develop a property as proposed, we will not adjudicate whether the Durkee Parties enjoy a "view shed" interest. See In re Leiter Subdivision Permit, No. 85-4-07 Vtec, slip op. at 4–5 (Vt. Envtl. Ct. Jan. 2, 2008) (Durkin, J.) (citing Appeal of Monty, Nos. 7-1-04 Vtec and 47-3-04 Vtec, slip op. at 6–7 (Vt. Envtl. Ct. Jan. 24, 2006)). Rather, our review at trial on this point will be limited to a determination of whether the proposed development conforms to Criterion 8. That inquiry will require us to determine whether the project as proposed has "an undue adverse effect on the scenic or natural beauty of the area . . . ." 10 V.S.A. § 6086(a)(8).

For these reasons, the Court concludes that Mr. Durkee, MPI, MDI, and Fireside are entitled to party status under Criterion 8, and we **DENY** SPLC's motion as to Criterion 8.

### v. Criterion 9(K) (Public Investment)

Criterion 9(K) directs the granting of a permit for a development on or adjacent to public lands upon a demonstration that the development "will not unnecessarily or unreasonably endanger the public or quasi-public investment" in the lands or "materially jeopardize or interfere with the function, efficiency, or safety of, or the public's use or enjoyment of or access to" the lands. 10 V.S.A. § 6086(a)(9)(K). This Criterion "seeks to protect state and local

---

[4] Although Applicant attached images that purportedly show the "views" from each property, we find them unhelpful without more specific points of reference.

16

governments from adverse fiscal impacts on public facilities and investments that are adjacent to the proposed project." Re: St. Albans Grp. & Wal-Mart Stores, Inc., No. 6F0471-EB, Mem. of Decision, at 9 (Vt. Envtl. Bd. Apr. 15, 1994). Regarding public investments in roadways and related traffic issues, Criterion 9(K) requires a person seeking party status to make a higher showing of an interest than Criterion 5 requires. In re North East Materials Grp., LLC, Amended Permit, No. 35-3-13 Vtec, slip op. at 10 (Vt. Super Ct. Envtl. Div. Aug. 21, 2013) (Walsh, J.) (citing Re: Van Sicklen Ltd. P'ship, No. 4C1013R-EB, Mem. of Decision, at 8 (Vt. Envtl. Bd. June 8, 2001)).

The Durkee Parties argue that they have a particularized interest under Criterion 9(K) because "the sheer volume of new traffic which will be generated by the Project[5] and its potential impact on traffic safety and congestion on roads used daily by [them] and their guests and invitees will likely jeopardize or interfere with both the efficiency and safety of the roadways and the public use and enjoyment of the impacted roads." (Durkee Parties' Resp. in Opp'n to Appellant's Mot. for Partial Summ. J. at 9, filed Feb. 19, 2014.) The Durkee Parties also note that SPLC's traffic analysis demonstrates that Phase I will increase the peak hour traffic on Killington Road from approximately 1040 trips per hour to 1156 trips per hour. Id. Thus, the Durkee Parties make no allegations beyond the traffic and congestion concerns addressed by Criterion 5, other than restating the standard within Criterion 9(K); we find no factual basis for the allegation that Phase I "will likely jeopardize or interfere with both the efficiency and safety of the roadways and the public use and enjoyment of the impacted roads." Thus, Appellants have not alleged a reasonable possibility of harm to a particularized interest in the publicly-supported roadways that Criterion 9(K) seeks to protect. Furthermore, the traffic and congestion concerns raised may be addressed within Mr. Durkee's case under Criterion 5.

Mr. Durkee further alleges that he has a particularized interest under Criterion 9(K) because he routinely accesses the Calvin Coolidge State Forest through an existing parking lot which the "project" will replace. While Mr. Durkee may be required to use a different ingress and egress for the state forest, he fails to demonstrate a reasonable possibility that Phase I will materially jeopardize or interfere with the state forest.

---

[5] Again, the Durkee Parties give no specific description of the "Project," and whether they refer only to Phase I or to the entire Master Plan.

17

For these reasons, we conclude that the Durkee Parties are not entitled to party status under Criterion 9(K), and we **GRANT** SPLC's motion as to Criterion 9(K).

### vi.    Conclusion

For the reasons discussed above, SPLC's motion for partial summary judgment on SPLC's Question 1 and the Durkee Parties' cross-motion for partial summary judgment on SPLC's Question 1 are both **GRANTED IN PART and DENIED IN PART.**  The Court makes the following party status determinations as to SPLC's Question 1:

| Party Status of the Durkee Parties | | |
|---|---|---|
| **Appellant** | **Property** | **Criteria** |
| Stephen Durkee | 2134 Killington Road & 2023 Killington Road | 1(B), 1(D), 1(E), 5, 8, 10 |
| Mountainside Properties, Inc. | East Mountain Road & U.S. Route 4 | 8, 10 |
| Mountainside Development, Inc. | Mountainside Drive | 8, 10 |
| Fireside Properties, LLC | 1128 Killington Road | 8, 10 |
| Killington Village Properties, Inc. | 923 Killington Road | 10 |

Question 2 – Mr. Demarest

Question 2 asks:

Whether Charlie Demarest qualifies as a party in this appeal pursuant to 10 V.S.A. § 6085(c)(1)(E) under Act 250 criterions 3 (Water Supply), and/or should have been granted party status in the proceedings below.

To date, Mr. Demarest has not filed a Notice of Appearance in this proceeding and is therefore not a party.  Because Mr. Demarest is not a party, both Question 2 and SPLC's motion for summary judgment as to Question 2, which we treat as a motion to dismiss for lack of standing, are **deemed non-justiciable** and Question 2 is therefore **DISMISSED.**  The Court cannot adjudicate a party status challenge when that party has not asserted that they have status to participate in the pending appeal.

### b.  Questions 3 and 4 – Party Status of the Southern Windsor County Regional Planning Commission and Two Rivers-Ottauquechee Regional Commission

Question 3 asks:

Whether Southern Windsor County Regional Planning Commission qualifies as a party in this appeal pursuant to 10 V.S.A. § 6085(c)(1)(C) under Act 250 criteria 9(K) (Public Investments) and 10 (Regional Plan), and/or should have been granted party status in the proceedings below.

18

Question 4 asks:

Whether Two Rivers-Ottauquechee Regional Commission qualifies as a party in this appeal pursuant to 10 V.S.A. 6085(c)(1)(C) under Act 250 criteria 9(K) (Public Investments) and 10 (Regional Plan), and/or should have been granted party status in the proceedings below.

Pursuant to 10 V.S.A. § 6085(c)(1), the following entities are entitled to party status before the Commission as a matter of right:

(A) The applicant;

(B) The landowner, if the applicant is not the landowner;

(C) The municipality in which the project site is located, and the municipal and regional planning commissions for that municipality; if the project site is located on a boundary, any Vermont municipality adjacent to that border and the municipal and regional planning commissions for that municipality; and the solid waste management district in which the land is located, if the development or subdivision constitutes a facility pursuant to subdivision 6602(10) of this title;

(D) Any State agency affected by the proposed project;

(E) Any adjoining property owner or other person who has a particularized interest protected by this chapter that may be affected by an act or decision by a district commission.

The Southern Windsor County Regional Planning Commission ("SWCRPC") is a compact of ten municipalities in east-central Vermont and is a political subdivision of state government organized under 24 V.S.A. § 4341.  (Rasmussen Aff. at ¶ 5, filed Feb. 20, 2014.)  The Town of Killington is not a member of SWCRPC.  SWCRPC has been involved in assessing land use impacts, including traffic impacts, in its region related to development at the Killington and Okemo resorts.  The Commission granted SWCRPC party status pursuant to 10 V.S.A. § 6085(c)(1)(E) as a party with a "particularized interest" under Criteria 5 and 9(K).

The Two Rivers-Ottauquechee Regional Commission ("TRORC") is a compact of thirty municipalities in east-central Vermont and is a political subdivision of state government organized under 24 V.S.A. § 4341.  (Gregory Aff. at ¶ 5, filed Feb. 20, 2014.)  The Town of Killington is not a member of TRORC, however, the Town of Bridgewater, which adjoins the Town of Killington, is a member of TRORC.  TRORC has been involved in assessing land use impacts related to development at the Killington resort.  The Commission granted TRORC party

19

status pursuant to 10 V.S.A. § 6085(c)(1)(C), based on the Town of Bridgewater's membership in TRORC and pursuant to 10 V.S.A. § 6085(c)(1)(E) as a party with a "particularized interest" under Criteria 5, 9(K), and 10.

A third regional commission, the Rutland County Regional Planning Commission ("RCRPC"), also participated in the Commission proceedings. Since the Town of Killington is a member of RCRPC, the Commission acknowledged that RCRPC was a statutory party pursuant to 10 V.S.A. § 6085(c)(1)(C), and was therefore entitled to standing under all applicable Act 250 criteria. Id. SPLC has not challenged RCRPC's standing as a party in either its Statement of Questions or its pending motion for summary judgment. We therefore focus our analysis on SPLC's challenges to TRORC and SWCRPC's standing as parties in this appeal.

As stated above, § 6085(c)(1)(C) expressly provides that a regional planning commission for the municipality in which the proposed project is located shall have party status before the Commission. If the proposed project is located on a municipal boundary, the regional planning commission for the municipality adjacent to that border also has party status before the Commission. 10 V.S.A. § 6085(c)(1)(C). Regional planning commissions qualify in the same manner as parties by right in an appeal to this Court. See 10 V.S.A. §§ 8502(5)(C)–(D).

The parties appear to dispute whether the project lies entirely within the borders of the Town of Killington (as SPLC asserts) or whether it borders the town boundary line shared by the Towns of Killington and Bridgewater (as TRORC asserts). The record before us does not resolve this dispute, and we therefore await clarification on this point at trial. The parties' dispute may be based in part upon how they each define the project under review: SPLC appears to take a more narrow approach, by limiting the party status inquiry to only those portions of the Master Plan for which SPLC seeks permit approval in the pending application; TRORC appears to take a broader approach, by referencing all components of the Master Plan in its definition of what the "project" entails. For purposes of SPLC's pending pre-trial motion, we give TRORC, as the non-moving party, the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. For reasons discussed in more detail below, we conclude that our party status analysis requires a full review of all Master Plan components as the "project" at issue.

20

Because the Town of Bridgewater adjoins a portion of the Killington Resort and the Master Plan project may have impacts beyond the specific land to be developed, including potential impacts in the Town of Bridgewater ("Bridgewater"),we conclude that Bridgewater would qualify as a party by right under § 8502(5)(D). See In re Killington, Ltd., 159 Vt. 206, 212 (1992) (concluding that the Town of Shrewsbury was a statutory party where proposed development of a ski area pond was wholly within the Town of Mendon but would impact land on the boundary of Shrewsbury and where parts of the ski area were on the Shrewsbury/Mendon town line). Because Bridgewater is a member of TRORC, we conclude that TRORC is also a party by right pursuant to § 8502(5)(D) and is therefore entitled to party status before this Court. Since SWCRPC does not include the Town of Killington as a member, nor any municipality that adjoins the project site, it is not entitled to party status pursuant to §§ 8502(5)(C)–(D). Id.

Although SPLC's Questions 3 and 4 do not specifically raise the issue of standing pursuant to § 6085(c)(1)(E), TRORC, joined by SWCRPC, also argues that these two regional commissions have standing to participate as parties with a "particularized interest" under Act 250 Criteria 5 and 9(K), pursuant to 10 V.S.A. § 6085(c)(1)(E).[6] SWCRPC and TRORC assert that their interest is based on their statutory purposes of developing strategies for managing growth and their efforts to address traffic-related impacts of the Master Plan on multiple member towns. SPLC counters that neither SWCRPC nor TRORC are entitled to party status under § 6085(c)(1)(E). Specifically, SPLC argues that as regional planning entities, SWCRPC and TRORC have only planning-related powers, and these planning functions do not constitute a particularized interest for the purposes of party status in an Act 250 appeal. We respectfully disagree with SPLC's assessment.

Regional commissions have an understanding of regional interests, developments, and the impacts of those developments, the most significant of which may have impacts well beyond the boundaries of a project's individual host communities. Regional commissions are required by law to "[d]evelop strategies specifically designed to assist municipalities in defining and managing growth and development that have cumulative impacts" and to "[a]ppear before

---

[6] Parties with a particularized interest qualify in the same manner in an appeal to this Court. 10 V.S.A. §§ 8504(a), 8502(7).

district environmental commissions to aid them in making a determination as to the conformance of developments and subdivisions with the [10 Act 250 criteria]." 24 V.S.A. § 4345a(10), (13). Even on the partial record now before us, it appears undisputed that the proposed project, particularly if successful, will have impacts well beyond the borders of the Town of Killington.

Because we conclude that TRORC is a party by right pursuant to § 8502(5)(D), we need not consider whether its interest in traffic and public investment within its member towns is sufficiently particularized for standing as a "person aggrieved" under §§ 8504(a) and 8502(7). As to SWCRPC, we are unable to conclude that its statutory purpose and related efforts amount to a particularized interest and that there is a reasonable possibility that its interest will be harmed by a decision on the Master Plan. However, given SWCRPC's purpose and experience in the region, we conclude that its input regarding regional impacts would be a valuable resource to these proceedings. Thus, upon our own motion, we allow SWCRPC to participate as a friend of the court pursuant to 10 V.S.A. § 6085(c)(5). As such, SWCRPC may file memoranda, proposed findings of fact and conclusions of law, and argument on legal issues, as well as provide testimony, file evidence, and cross-examine witnesses, pursuant to the schedule outlined for the parties to this appeal. Id.

For these reasons, SPLC's motion for summary judgment as to Question 3 (concerning SWCRPC) is **GRANTED** and its motion as to Question 4 (concerning TRORC) is **DENIED.** Upon our own motion, we grant SWCRPC status to participate as a friend of the court pursuant to 10 V.S.A. § 6085(c)(5). Two Rivers-Ottauquechee Regional Commission retains party status in this appeal under Act 250 Criteria 5 and 9(K).

### c. Question 5 – Party Status of Okemo Limited Liability Company

Question 5 asks:

Although Okemo Limited Liability Company withdrew its request for party status, whether it would be permissible for it to reappear as a party in this proceeding under Act 250 criterion 5 (Traffic), as suggested by the District #1 Environmental Commission (the "District Commission").

To date, Okemo Limited Liability Company has not filed a Notice of Appearance in this proceeding and is therefore not a party. Because Okemo Limited Liability Company is not a party, both Question 5 and SPLC's motion for summary judgment as to Question 5, which we

22

treat as a motion to dismiss for lack of standing, are **deemed non-justiciable** and Question 5 is therefore **DISMISSED.** The Court cannot adjudicate a party status challenge when that party has never asserted that they have status to participate in this appeal.

### d. Question 6 – Party Status of the Town of Bridgewater

Question 6 asks:

Whether the Town of Bridgewater qualifies as a party in this appeal pursuant to 10 V.S.A. § 6085(c)(1)(C), and/or should have been granted party status in the proceedings below.

To date, the Town of Bridgewater has not filed a Notice of Appearance in this proceeding and is therefore not a party. Because The Town of Bridgewater is not a party, Question 6 and SPLC's motion for summary judgment as to Question 6, which we treat as a motion to dismiss for lack of standing, are **deemed non-justiciable** and Question 6 is therefore **DISMISSED**. Here, again, the Court cannot adjudicate a challenge to party status when that party has never asserted that they have status to participate in this appeal.

## II. Propriety of Findings and Conclusions for Subsequent Phases

Question 7 asks:

Whether findings of fact and conclusions of law can properly make certain findings for subsequent phases under Act 250 criteria 5 (Traffic), 9(A) (Impact of Growth), and 9(K) (Public Investments) when (a) SPLC did not seek or request such findings under the subject criteria, (b) SPLC purposefully did not address the subject criteria for future phases in its application, and (c) the Natural Resource Board's Master Permit Policy and Procedure for Partial Findings of Fact states it is generally not possible for a district commission to make final findings of fact and conclusions of law for a phased project under certain Act 250 criteria, including criteria 5 (Traffic), 6 (Educational Services), 7 (Municipal Services), 8 (Aesthetics), 9(A) (Impact of Growth), 9(K) (Public Investments), and 10 (Regional Plan), until a final decision is issued for a particular phase or for the entire project based upon the review of a complete application.

SPLC requests summary judgment in its favor as to Question 7, and the NRB cross-moves for summary judgment. For the reasons detailed below, we deny SPLC's motion.

As discussed above, this is a <u>de novo</u> appeal. 10 V.S.A. § 8504(h). Thus, the Court does not consider any previous decisions or proceedings below; "rather, we review the application anew as to the specific issues raised in the statement of questions." In re Whiteyville Props. LLC, No. 179-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 13, 2012) (Durkin, J.). While

23

the wording SPLC chose for Question 7 does not attack a specific factual or legal determination made by the District Commission, it appears to make such a challenge by implication. We will not assess the propriety of the District Commission's factual or legal determinations, since we are charged with receiving evidence anew and making our own independent determinations. Id. We therefore regard SPLC's Question 7 as seeking to have the Court rule that this Court cannot make similar conditional findings on appeal.

SLPC's Question 7 and the related motion challenge the scope of review allowed in a master plan proceeding. To address this legal issue, we revisit the purpose and goals of master plan review, as established by the NRB, the entity charged with administering review of state land use permit applications.

The NRB has established a procedural guide for reviewing master plans, entitled "Master Permit Policy and Procedure for Partial Findings of Fact (2000)" ("Master Plan Policy"). The stated objective of the Master Plan Policy "is to provide guidance and greater predictability to the applicant and all parties in the review of complex development projects." Master Plan Policy at 1, available at http://www.nrb.state.vt.us/publications/policies/masterpmtpolicy.pdf. The manner in which SPLC and its predecessor has sought master plan review does not evidence that these stated objectives have been achieved in these proceedings, given that SPLC's predecessor first submitted a master plan application prior to 1998. See In re SP Land Co., LLC, 2011 VT 104, ¶ 2. During the ensuing 26 years, the Killington master plan has been revised, forsaken, and renewed. The administrative processing and the courts' adjudication of the various master plan applications and appeals has also not fostered the "guidance and greater predictability" that can and has occurred in other master plan proceedings. See Re: Stratton Corp. Master Plan Application, No. 2W0519-10-EB, Findings of Fact, Conclusions of Law, and Order (Vt. Envtl. Bd. May 8, 2001) and Re: Okemo Mountain, Inc., Nos. 2S0351-30(2nd Revision)-EB, #2S0351-31-EB, and #2S0351-25R-EB, Findings of Fact, Conclusions of Law, and Order (Vt. Envtl. Bd. Feb. 22, 2002).

A district commission (and this Court on appeal) is empowered to render partial factual findings and legal conclusions in a master plan proceeding, particularly when "partial findings of fact will provide guidance and greater predictability to the applicant in preparing final plans for the project or for subsequent phases." Master Plan Policy at 1.

24

The Act 250 Rules (2009)[7] do not expressly announce the procedures for master plan review, presumably since the NRB has established such procedures in its Master Plan Policy. However, Act 250 Rule 21(D) establishes what a district commission (or this Court, on appeal) may do when it does not receive sufficient evidence to allow it to render full findings and conclusions on all Act 250 criteria that are implicated by a proposed project:

> If the district commission decides to issue a partial decision and insofar as the applicant sustains his or her burden of proof or a party opposing the application fails to sustain its burden of proof as provided for in the Act under the applicable criteria, the district commission shall make findings of fact and conclusions of law including any conditions or terms to be imposed by the district commission. If the district commission is unable to make such findings of fact supporting a conclusion of law by reasons of inadequate evidence or information, it shall inform the applicant and all parties. Such findings of fact, conclusions of law and any conditions or limitations shall remain in effect, pending issuance or denial of a permit under the Act, for a reasonable and proper term as determined by the district commission. Such findings of fact and conclusions of law may be subject to timely application for extension pursuant to Rule 35.

We interpret Rule 21(D) to provide a practical mechanism to be employed when reviewing a project, especially a master plan, for which the evidence presented does not allow for complete findings or legal conclusions. Rather than requiring that a district commission (or this Court on appeal) simply reject a pending application, the commission and this Court are empowered to make findings and legal conclusions as far as the evidence presented allows. Rule 21(D) also allows the district commission, and this Court on appeal, to condition any positive findings by requiring the applicant to present additional evidence in a future permit application that will allow for complete positive findings.

The District Commission made partial findings, and imposed a condition associated with those findings, regarding the traffic that may be generated by the projects for which SPLC currently seeks a permit, and also for the subsequent components of its master plan. Review of the cumulative traffic impacts of all of SPLC's projects is difficult in the isolation of an individual permit proceeding. Allowing discussion and partial findings on such cumulative impacts during a master plan proceeding provides SPLC and other parties "guidance and greater predictability .

---

[7] The NRB most recently amended the Act 250 Rules in 2013. Rule 21(D) remains the same in the rules adopted in 2009 and those adopted in 2013.

. . in preparing final plans for the . . . subsequent phases" of the master plan. Master Plan Policy at 1.

This Court does not intend to simply affirm the District Commission's partial findings and conditions which SPLC challenges in this appeal. Rather, we intend to consider the admissible evidence presented by all parties and render full positive or negative findings where the credible evidence allows. Where the credible evidence does not allow, we intend to render partial findings, some or all of which may include conditions, so that we may provide the "guidance and greater predictability" that the Master Plan Policy and Act 250 Rule 21(D) requires.

SPLC is correct in its assertion that master plan review often makes it impossible or unlikely to render full factual findings under certain criteria. Full factual findings require sufficient detail in the evidence presented to allow for an analysis of a future project and its impacts. When some components of a master plan are years and even decades away it is unreasonable to ask an applicant to provide evidence with the necessary specificity to allow for full factual findings.

Nevertheless, we disagree with SPLC's assessment that such circumstances prohibit the issuance of partial findings, with or without conditions. In fact, the language cited by SPLC from the Master Plan Policy supports an interpretation that allows for full or partial findings concerning future master plan phases.[8] We therefore conclude that Rule 21(D) and the Master Plan Policy allow for partial findings and conditions to be issued, so as to provide the "guidance and greater predictability" that the Rule and Policy encourage.

For all these reasons, we **DENY** SPLC's motion for summary judgment on Question 7.

Turning to the NRB's motion on this same Question, we understand that the NRB is advocating for the same process at trial that we just announced. We therefore answer SPLC's Question 7 with a response that is generally in the affirmative: we intend to render full or partial findings, as the credible evidence permits, on all phases identified as within the SPLC

---

[8] The language cited by SPLC notes that "it is <u>generally</u> not possible for a district commission to make <u>final</u> findings of fact and conclusions of law for a phased project under certain criteria," including criteria 5 and 9(K). <u>Master Plan Policies</u> at 2, fn. 1 (emphasis added). We understand that the NRB, in adopting these Policies, used the term "generally" to emphasize that full factual findings under the referenced criteria <u>can</u> sometimes occur, and that their use of the phrase "final factual findings" was intended to note that partial (i.e.: non-final) findings may be issued under the cited criteria.

26

master plan. To the extent that we render partial findings on the future phases, we reserve the right to impose certain conditions on those findings, so that the Court may provide the "guidance and greater predictability" that the Rule and Policy encourage.

For the same reasons, we **GRANT** the NRB's cross-motion for summary judgment on Question 7 and thereby dispose of the legal issues that Question 7 raises.

### III.     Correction of Alleged Errors in Commission Decision and Permit

Question 13 asks:

Whether the Findings of Fact and Conclusions of Law issued below by the District Commission, along with the associated Land Use Permit, can and should be remanded to the District Commission to clarify and correct various matters beyond the scope of the substantive questions to be determine by this court on appeal – and which will thus remain in place notwithstanding the filing of this appeal – while the remaining issues under appeal are being adjudicated before this Court.

SPLC seeks summary judgment on Question 13, and the NRB cross-moves for summary judgment in its favor. Having already determined that clarification is required regarding the alleged errors in the Commission's decision and the possibility of remand, we conclude that material facts remain at issue and neither SPLC nor the NRB is entitled to judgment as a matter of law on Question 13. SPLC's motion and the NRB's cross-motion are therefore **DENIED.**

### Conclusion

For the reasons discussed above, the NRB's motion to dismiss as to SPLC's Questions 8 and 9 is **DENIED.** We **DIRECT** SPLC to clarify Question 13 and specifically state the matters for which it seeks correction **within 10 business days** of this decision (i.e.: by no later than **Tuesday, August 19, 2014)**; we therefore **DEFER** our ruling on the NRB's motion to dismiss as to SPLC's Question 13 until after the 10 days for SPLC's clarification has passed.

SPLC's motion for summary judgment as to its Question 1 is **GRANTED IN PART** and **DENIED IN PART.** The Court makes the following party status determinations as to SPLC's Question 1:

| Party Status of the Durkee Parties | | |
|---|---|---|
| **Appellant** | **Property** | **Criteria** |
| Stephen Durkee | 2134 Killington Road 2023 Killington Road | 1(B), 1(D), 1(E), 5, 8, 10 |
| Mountainside Properties, Inc. | East Mountain Road U.S. Route 4 | 8, 10 |
| Mountainside Development, Inc. | Mountainside Drive | 8, 10 |
| Fireside Properties, LLC | 1128 Killington Road | 8, 10 |
| Killington Village Properties, Inc. | 923 Killington Road | 10 |

SPLC's motion for summary judgment as to Questions 2, 5, and 6, regarding the party status of Mr. Demarest, the Okemo Limited Liability Company, and the Town of Bridgewater, is **deemed non-justiciable**. As a consequence, we **DISMISS** Questions 2, 5, and 6.

SPLC's motion for summary judgment as to Question 3 (concerning SWCRPC) is **GRANTED** and its motion as to Question 4 (concerning TRORC) is **DENIED.** Upon our own motion, we grant SWCRPC status to participate as a friend of the court pursuant to 10 V.S.A. § 6085(c)(5). Two Rivers-Ottauquechee Regional Commission retains its statutory party status under all applicable criteria, pursuant to 10 V.S.A. § 6085(c)(1)(C).

SPLC's motion for summary judgment as to Question 7, regarding the propriety of the Court conducting a full review of SPLC's Master Plan, is **DENIED**. We **GRANT** the NRB's summary judgment request and answer Question 7 in the affirmative, thereby disposing of that Question from the issues that remain to be adjudicated at trial.

Finally, SPLC's motion for summary judgment and the NRB's cross-motion for summary judgment as to Question 13, regarding correction of alleged errors in the Commission decision and permit, are **DENIED**. SPLC shall comply with the filing directives concerning Question 13 that are contained in this Decision at pages 7 and 27, above.

Now that the Court has addressed all pending motions, we also separately issue a final pre-trial Revised Scheduling Order. The related appeal, <u>Killington Resort Parking Project</u>, No. 173-12-13 Vtec, is scheduled for trial to begin on October 29, 2014. This appeal, <u>Killington Village Master Plan</u>, No. 147-10-13 Vtec, is scheduled for trial to begin on December 1, 2014. The parties are directed to plan accordingly.

Electronically signed at Berlin, Vermont on August 06, 2014 pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division